UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DAVID SHATZ,                                  :
              Plaintiff,             :
                                :      **MEMORANDUM DECISION**
v.                                            :
                                :      11 CV 5936 (VB)
LINDA STRUMPF,                                :
              Defendant.             :
---------------------------------------------------------------x

Briccetti, J.:

      Plaintiff David Shatz brings this action against defendant Linda Strumpf, asserting claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and state law claims for violation of due process, defamation and intentional infliction of emotional distress.  Now pending are defendant's motion to dismiss (Doc. # 10), and plaintiff's motion for summary judgment.  (Doc. # 20.)  For the following reasons, defendant's motion to dismiss is converted to a motion for summary judgment and is GRANTED, and plaintiff's motion for summary judgment is DENIED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as to plaintiff's federal claims and 28 U.S.C. § 1367(a) as to plaintiff's state law claims.

## BACKGROUND

      The parties have submitted briefs, statements of facts, affirmations, and declarations with supporting exhibits which reflect the following factual background.

      Strumpf is a debt collector.[1]  Strumpf brought a debt collection action against Shatz in Civil Court of the City of New York in Bronx County based upon non-payment of a contractual obligation (the "civil court action").  The summons for that action indicates Shatz's address was

---

    [1]    Defendant is an attorney appearing on her own behalf in this action.

1814 Mahan Avenue, Bronx, New York 10461.  Shatz, however, denies he has ever lived in Bronx County.  Shatz also claims Strumpf failed to serve a summons and complaint or any other notice of the civil court action on him.

On May 16, 2007, Strumpf obtained a judgment against Shatz in the civil court action.  That judgment remains in full force and effect.  Following judgment, Strumpf put a restraint on Shatz's North Fork Bank account in June 2007.

On August 10, 2007, Shatz brought an action in this Court asserting substantially the same claims he brings in the instant case.  See Shatz v. Strumpf, 07-cv-7129 (SCR) (Complaint, Doc. # 1) ("Shatz I").  The parties settled that action, and Judge Stephen C. Robinson ordered the case discontinued on September 26, 2008, subject to reopening if the settlement was not finalized.  Id. (Order, Doc. # 11).  Shatz I was never reopened.

Shatz alleges the parties executed a settlement agreement in connection with the settlement of Shatz I, which required Strumpf to cease collection of the debt and to vacate the civil court action judgment.  Shatz alleges Strumpf breached that agreement by failing to vacate the civil court action judgment and by continuing to collect the debt.

In support of his claims, Shatz submits: (1) an undated General Release with purported electronic signatures by Shatz, an unidentified notary, and Strumpf's attorney in Shatz I, Arthur Sanders; and (2) an undated and unsigned Settlement Agreement and Release.  Strumpf denies ever signing a settlement agreement in connection with the settlement of Shatz I.  Strumpf also claims Sanders denies ever signing a settlement agreement.  Rather, Strumpf sent a settlement payment to her attorney in November of 2008, and the case was discontinued.  Strumpf contends one month after she mailed her payment to Sanders, he received an email from Shatz's attorney, Shmuel Klein, with a proposed written settlement agreement.  Because Strumpf had already

2

made payment and the case was closed, Sanders did not forward a copy of the proposed agreement to Strumpf, nor did he respond to Klein.

Approximately four years later, in connection with the civil court action, on June 20, 2011, Strumpf served a subpoena duces tecum on Chase Bank USA N.A. ("Chase") requesting the bank to appear and produce documents.[2]

On August 24, 2011, plaintiff filed the instant action asserting claims for violations of the FDCPA, due process, defamation, and intentional infliction of emotional distress. With respect to the FDCPA, plaintiff alleges defendant violated various provisions: 15 U.S.C. §§ 1692d(5), 1692e(2) and (8), 1692f(1), (5) and (6), 1692g(a) and (b), and 1692i(a)(2). Defendant's motion raises three arguments: (1) the court lacks subject-matter jurisdiction under the Rooker-Feldman doctrine, (2) plaintiff's claims are barred under the doctrines of issue and claim preclusion, and (3) the statute of limitations has expired for plaintiff's FDCPA claims.

## DISCUSSION

I.  Standards of Review

A district court may convert a motion to dismiss under Rule 12(b)(6) into a summary judgment motion under Rule 56 if the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." Malaney v. Elal Israel Airlines, 331 Fed. App'x. 772, 774 (2d Cir. 2009) (quoting Groden v. Random House, Inc., 61 F.3d 1045, 1052 (2d Cir. 1995)); see also Fed. R. Civ. P. 12(d). Defendant filed a motion to dismiss on November 8, 2011, that presented matters outside of the pleadings, and expressly requested the motion be converted to a motion for summary judgment. At a pretrial conference on November 23, 2011, Strumpf again requested her motion be treated as one for summary judgment. On November 29, 2011, Shatz

---

[2] Plaintiff contends defendant obtained this subpoena against him requiring him to appear in Bronx civil court, but there is no evidence in the record to support that contention.

requested permission to cross-move for summary judgment. Both requests were granted. See Order (Doc. # 13). In light of Strumpf's submissions outside the pleadings, Shatz's notice of those submissions, and Shatz's own submissions, the Court converts Strumpf's motion to dismiss the complaint to a motion for summary judgment pursuant to Rule 12(d).

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. The mere existence of a scintilla of evidence in support of the nonmoving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for her. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011).  If there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.     Rooker-Feldman

Defendant argues she is entitled to summary judgment because the court lacks subject-matter jurisdiction under the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine bars federal courts from hearing claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  Four requirements must be met for the doctrine to apply: (1) the federal court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district court proceedings commenced.  Id. at 85.  The first and fourth requirements are procedural, and the second and third requirements are substantive. Id.

The procedural requirements are met here.  Shatz lost in the civil court action, and that judgment, entered May 16, 2007, was rendered well before these proceedings commenced on August 24, 2011.

Only some of plaintiff's claims meet the substantive requirements.  Under the substantive requirements, a federal suit is barred only "if it complains of injury from the state-court judgment

5

and seeks review and rejection of that judgment, but not if it raises some independent claim." Hoblock v. Albany County Bd. of Elections, 422 F.3d at 86 (quotations omitted).

Claims that challenge the validity of the state court judgment itself are barred by the Rooker-Feldman doctrine. See Ballyhighlands, Ltd. V. Bruns, 182 F.3d 898, at *2 (2d Cir. 1999) ("Once entered, a default judgment is a valid judgment, even if the affidavit contained allegedly false information, unless a party successfully moves to vacate that judgment pursuant to N.Y. Civ. Prac. L. & R. Rules 5015 or 317. Rooker-Feldman applies to default judgments just as it does to other types of judgments."); Shieh v. Flushing Branch, Chase Bank USA, N.A., 2012 WL 2678932, at *5 (E.D.N.Y. July 6, 2012) (no jurisdiction to hear claims contesting propriety of default judgment entered in state court; "[i]f [plaintiff] wishes to challenge the validity of the default judgment, she must move to vacate it in the rendering state court."); Granger v. Harris, 2007 WL 1213416, at *5 (E.D.N.Y. Apr. 17, 2007) (claims alleging default judgment improperly obtained without proper service of process were barred).

Here, like the plaintiff's claims in Granger v. Harris, Shatz argues defendant obtained the state court default judgment improperly without notice. In other words, plaintiff alleges it was legal error for the trial judge to enter judgment against him. The injury is the existence of the state court judgment, which Shatz requests be "revered and nullified." Plaintiff's "due process" claims, therefore, are barred because "in essence, they seek to overturn the default judgment entered against [Shatz] in the state court action." Granger v. Harris, 2007 WL 1213416, at *5. Plaintiff could have brought a motion to vacate the state court judgment. This Court is without jurisdiction to vacate the state court judgment for him.

In contrast, FDCPA claims that do not challenge the state court judgment itself, but rather challenge debt collection practices are independent claims and, therefore, are not barred. Wyles

v. Excalibur I, LLC, 2006 WL 2583200, *2 (D. Minn. Sept. 7, 2006) ("Because an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, a claim under the FDCPA is an 'independent claim' from a state court action to collect a debt, and Federal courts have jurisdiction over the case."); Mascoll v. Strumpf, 2006 WL 2795175, at *8 (E.D.N.Y. Sept. 26, 2006) (claim defendant misused judicial process by wrongly persisting in efforts to collect on debt raised independent claim, even if claim denied a legal conclusion of underlying state court that defendants were legally entitled to recover debt); Rivera v. Ragan & Ragan, P.C., 2010 WL 2635790, at *4 (E.D. Pa. June 25, 2010) (collecting cases). Here, plaintiff's FDCPA claims do not challenge the state court judgment itself, but rather challenge defendant's debt collection practices. Therefore, those claims are independent and are not barred by the Rooker-Feldman doctrine.

III.    Res Judicata

Defendant argues plaintiff is precluded from bringing his claims – except claims raised with respect to the settlement agreement – because they are identical to the claims raised in Shatz I, which action was discontinued. Alternatively, defendant argues plaintiff is precluded from litigating every issue – except service of the subpoena and existence of a settlement agreement – because plaintiff had a full and fair opportunity to litigate these issue in Shatz I.

"[R]es Judicata, or claim preclusion, provides that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). "To prove that a claim is precluded under this doctrine, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266

7

F.3d 78, 91 (2d Cir. 2001) (quotations omitted). "Under New York law, collateral estoppel will preclude a federal court from deciding an issue if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." McKithen v. Brown, 481 F.3d 89, 105 (2d Cir. 2007) (quotations omitted). "Both res judicata and issue preclusion contemplate the existence of a final judgment by the highest court to have considered the case." In re PCH Associates, 949 F.2d 585, 593 (2d Cir. 1991).

Here, res judicata does not preclude plaintiff from bringing his claims or litigating any of the issues raised in his complaint because Shatz I was not an adjudication of plaintiff's claims on the merits. Shatz I was "discontinued, without costs to any party, subject to reopening should the settlement not be concluded within forty-five (45) days." Shatz v. Strumpf, 7-cv-7129 (SCR) (Sept. 22, 2008) (Order, Doc. # 11) (emphasis added). Judge Robinson's order discontinued the action "subject to reopening" the case; thus, the action was discontinued without prejudice. Under federal and New York law, a discontinuance or dismissal without prejudice does not operate as adjudication on the merits. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) ("'[D]ismissal . . . without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' Rule 41(a)(1), and thus does not have a res judicata effect."); Camarano v. Irvin, 98 F.3d 44, 47 (2d Cir. 1996) ("dismissal without prejudice has no res judicata effect on a subsequent claim."); Conestoga Title Ins. Co. v. ABM Title Services, Inc., 2011 WL 651893, at *3 (S.D.N.Y. Feb. 17, 2011) (citing David D. Siegel, N.Y. Practice § 298 (4th ed. 2010)).

And, because there was no adjudication on the merits, none of the issues raised in Shatz I were actually and necessarily decided as required for issue preclusion to apply. See In re PCH

Associates, 949 F.2d at 593 ("With respect to issue preclusion, it must be remembered that for the doctrine to be properly invoked the particular issue currently in dispute must have been both actually litigated and actually decided.") (quotation omitted).  Indeed, defendant does not contend any issues were decided; rather she states only that plaintiff had a full and fair opportunity to litigate.

Because Judge Robinson's discontinuance was not a final adjudication on the merits, plaintiff is not precluded from bringing his claims or issues in this case.

IV.     Plaintiff's FDCPA Claims

Plaintiff claims defendant violated various provisions of the FDCPA: 15 U.S.C. §§ 1692d(5), 1692e(2) and (8), 1692f(1), (5) and (6), 1692g(a) and (b), and 1692i(a)(2).

Plaintiff does not make clear when any of the alleged FDCPA violations occurred.[3] Plaintiff's allegations, however, generally concern either defendant's conduct in obtaining the underlying civil court judgment on May 16, 2007, or defendant's subsequent service of a subpoena on Chase in June 20, 2011.

Defendant argues the statute of limitations expired as to all actions taken by defendant except service of the subpoena on Chase.

---

[3] On a motion for summary judgment, Local Rule 56.1 requires parties to submit a statement of the material facts to which the moving party contends there is no genuine issue to be tried.  Each statement "must be followed by citation to evidence which would be admissible" as required by Fed. R. Civ. P. 56(c).  Local Rule 56.1(d).  Plaintiff's statement of "Uncontested Facts" fails to cite to any evidence.  Regardless, the Court has thoroughly reviewed the entire record to determine whether there is any admissible evidence to support any of plaintiff's claims.  See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) ("[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."); IBS Ketel, Ltd. v. Korea Telecom Am., Inc., 2000 WL 821013, at *1, n.1 (S.D.N.Y. June 22, 2000).

The Court agrees. To the extent plaintiff's claims concern defendant's conduct in obtaining the underlying civil court judgment, those claims are barred by the FDCPA's one-year statute of limitations. Similarly, plaintiff's claim that defendant failed to send a validation notice is time-barred.

A.  Statute of Limitations

A claim for violations of the FDCPA may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). When FDCPA claims are based upon prior debt collection litigation, courts are split as to when the FDCPA's one-year statute of limitations begins to run. Compare Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997) (claims accrue upon filing of complaint), with Johnson v. Riddle, 305 F.3d 1107, 1113 (10th Cir. 2002) (claims accrue upon service of complaint). When FDCPA claims are based upon the failure to serve a validation notice, 15 U.S.C. § 1692g(a) (validation notice must accompany or follow within five days a debt collector's "initial communication" with a consumer), claims accrue five days after the debt collector's initial communication with consumer. See Ehrich v. RJM Acquisitions LLC, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) (alleged violation of section 1692g(a) was complete five days after receipt of the initial communication).

With respect to plaintiff's claims arising out of the underlying civil court action, even assuming his claims accrued upon service in 2007, the claims brought on August 24, 2011, are clearly untimely. With respect to plaintiff's section 1692g(a) claim, the record reflects plaintiff was first contacted by defendant's office on or about May 11, 2006. Because Strumpf's initial communication took place in 2006 and plaintiff did not file this suit until August 24, 2011, that claim is also untimely.

10

Therefore, plaintiff's FDCPA claims are barred as to all actions taken by defendant except for service of the subpoena on Chase on June 20, 2011.

      B.      <u>FDCPA Claims Arising Out of Service of Subpoena</u>

The gravamen of plaintiff's complaint is defendant allegedly entered into a settlement agreement in Shatz I in which defendant agreed to stop collecting the debt and to vacate the underlying civil court action judgment. Defendant's continued attempt to collect the state court judgment by serving a subpoena on Chase, according to plaintiff, violates the parties' settlement agreement and thereby violates the FDCPA. In support of plaintiff's allegations, plaintiff produced two agreements.

Defendant denies entering into any settlement agreement or violating the FDCPA.

As previously noted, the underlying state court judgment remains valid. Thus, if in settling Shatz I defendant did not agree to vacate the state court judgment and cease debt collection, then defendant's service of a subpoena to enforce that judgment is not a violation under the FDCPA. For the reasons below, the Court concludes there was no binding written or oral agreement between the parties. Therefore, defendant did not breach any settlement agreement or violate the FDCPA.

           i.      <u>Written Settlement Agreement</u>

"A settlement agreement is a contract which is binding and conclusive, and is interpreted according to general principles of contract law." <u>Rispler v. Spitz</u>, 377 F. App'x 111, 112 (2d Cir. 2010) (citing <u>Red Ball Interior Demolition Corp. v. Palmadessa</u>, 173 F.3d 481, 484 (2d Cir.1999) and <u>Powell v. Omnicom, BBDO/PHD</u>, 497 F.3d 124, 128 (2d Cir. 2007)) (quotations omitted). "Pursuant to New York law, to have a binding settlement agreement, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." <u>Collick v. United States</u>, 552

11

F. Supp. 2d 349, 352 (E.D.N.Y. 2008).  The proponent of a contract has the burden of proving the existence of a contract by a preponderance of the evidence.  Lindner v. Am. Exp. Corp., 2007 WL 1623119, at *4 (S.D.N.Y. June 5, 2007) (citing First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)).

While the decision to settle a case rests with the client, an attorney who enters into a settlement agreement on behalf of his client is presumed to have the authority to do so.  United States v. Manning, 107 F.3d 5, at *1 (2d Cir. 1997).  "The party challenging the attorney's authority has the burden of proving that the attorney lacked authority."  Id.

Shatz submits two alleged settlement agreements: (1) a one-page undated "General Release" with purported electronic signatures by Shatz, an unidentified notary, and defendant's attorney in Shatz I; and (2) a document entitled "Settlement Agreement and Release" that is both undated and unsigned.  Shatz does not claim to have a signed copy of the second agreement.

Strumpf does not dispute her attorney had authority to settle Shatz I.  Rather, Shatz denies an agreement to settle was ever reached or signed.

Although Shatz submits two agreements, the Court has closely reviewed the allegations of the complaint and the two purported agreements, and finds Shatz is only seeking to enforce the second agreement.  The Court has made this determination based upon Shatz's allegations in his complaint, paragraphs 9 and 10,[4] which quote the two provisions of the agreement he seeks to enforce:

> "Defendant specifically and clearly agreed that ' . . . within 10 days of signing this agreement, Linda Strumpf shall vacate a certain Index # CV-106569-06/BX filed 12/28/2006, in the Bronx County Civil Office.'"

---

[4] Shatz repeats these allegations in his affirmation in support of his motion for summary judgment.  See October 27, 2011 Affirmation (Doc. # 30), ¶¶ 9-10.

> "In addition to agreeing to vacate the collection action against Plaintiff, Defendant 'Linda Strumpf further agrees[d] not to collect, assign, sell, and report or verify said alleged debt to any entity.'"

These provisions, as quoted by Shatz, only exist in the second unsigned agreement. Shatz bears the burden of proving the existence of an agreement. Because Shatz produced only an unsigned agreement, he failed to meet his burden. Accordingly, the Court finds no valid written agreement between the parties.

        ii.        Oral Settlement Agreement

"Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document. This freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement. In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution." Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985). The Second Circuit has articulated four factors to consider in determining whether the parties intended to be bound in the absence of a document executed by both sides. "The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Id. No single factor is decisive. Ciaramella v. Reader's Digest Ass'n., 131 F.3d 320, 323 (2d Cir. 1997).

        1.        Express Reservation

"Although this factor is phrased in terms of 'express' reservations, courts – including the court in Winston – also analyze whether the particular facts and circumstances of the case – such as the nature of the negotiations or the language of any draft agreements – demonstrate an

13

implied reservation of the right not to be bound until the execution of a written agreement."
Lindner v. Am. Exp. Corp., 2007 WL 1623119, at *6 (S.D.N.Y. June 5, 2007) (citing Winston, 777 F.2d at 81).

Here, the essential provisions of the Settlement Agreement and Release demonstrate an implied reservation of the right not to be bound until the execution of a written agreement. First, defendant's obligation to vacate the civil court action judgment was not effective unless she signed the agreement: "Within 20 days of signing this agreement, Linda Strumpf shall vacate" the civil court action judgment. If Strumpf never signed the agreement, she had no obligation to vacate the civil court action judgment. Compare Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d at 324 (agreement provided that it "shall not become effective . . . until it is signed."). Second, the dismissal of Shatz I was to be done "[i]n conjunction with the execution of this Agreement." Thus, if the parties failed to execute the agreement, there was no obligation to file a stipulation of dismissal with prejudice. Notably, no such stipulation was ever filed.

Accordingly, the court finds the parties reserved the right not to be bound outside a final written agreement based on the terms of the Settlement Agreement and Release and the actions of the parties.

2. Partial Performance

The second factor is met when "one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d at 325. Here, even though defendant paid $5,000, there is no evidence of partial performance because the question is whether plaintiff partially performed and whether defendant accepted performance (not whether defendant performed and plaintiff accepted performance). The Settlement Agreement and Release required plaintiff to release

defendant and to execute and file a stipulation of dismissal with prejudice against defendant. As previously noted, Shatz I was not dismissed with prejudice; it was dismissed subject to reopening. See id. (finding no partial performance when the two basic elements of consideration were not provided to the party disclaiming the existence of an agreement).

### 3. Terms Remaining to be Negotiated

Plaintiff argues the parties' agreement consisted of four principal terms: (1) defendant pays plaintiff $5,000, (2) defendant ceases collecting the debt, (3) defendant vacates the underlying civil court action judgment, and (4) plaintiff dismisses Shatz I with prejudice and releases defendant from liability.

Defendant contends she agreed to pay plaintiff $5,000 in consideration for plaintiff withdrawing his FDCPA claims and releasing defendant from liability.

The Court finds the parties had not yet agreed on all material terms. Even if the General Release was considered a preliminary settlement term sheet, it only contained terms 1, 2, and 4 of plaintiff's alleged agreed upon terms. The Settlement Agreement and Release contained a new term 3 requiring plaintiff to vacate the underlying civil court action judgment. Thus, even assuming the parties agreed to the terms of the General Release, the later drafted Settlement Agreement and Release contained a new provision that was not agreed upon. "[T[he existence of even 'minor' or 'technical' points of disagreement in draft settlement documents [are] sufficient to forestall the conclusion that a final agreement on all terms [has] been reached." Ciaramella v. Reader's Digest Ass'n, Inc., at 325 (quoting Winston, 777 F.2d at 82-83).

Because the parties had not agreed to all material terms, this factor weighs against finding a binding oral settlement agreement.

### 4. Type of Agreement Usually Reduced to a Writing

Settlement agreements "are generally required to be in writing or, at a minimum, made on the record in open court." Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d at 326 (citing N.Y. C.P.L.R. § 2104). "Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." Id. (quoting Winston, 777 F.2d at 83). Moreover, agreements involving complex terms or long term effects are generally committed to writing. Compare Britto v. Salius, 360 Fed. App'x 196, 199 (2d Cir. 2010) (finding binding oral agreement where agreement involved only a simple exchange of cash for termination of the lawsuit), with Winston v. Mediafare Entm't Corp., 777 F.2d at 83 (finding no binding agreement where settlement agreement was four pages and contained obligations lasting several years).

Here, the parties did not make a record of their agreement in open court. Moreover, the terms of plaintiff's alleged agreement required more than a simple exchange of cash for termination of the suit. It required Strumpf to vacate the civil court action judgment. Although it likely would not have taken several years to vacate that judgment, it would have taken an indeterminate amount of time to make motions and obtain a new judgment.

Based on the above four factors, the Court finds no binding oral settlement agreement.

In sum, because defendant did not agree to vacate the state court judgment and cease debt collection, she did not violate the FDCPA by serving a subpoena to enforce the civil court action judgment. Accordingly, defendant is entitled to summary judgment on plaintiff's FDCPA claims.

V.    Plaintiff's State Law Claims

Having dismissed plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Plaintiff's motion for summary judgment is DENIED (Doc. # 20), and defendant's motion for summary judgment is GRANTED. (Doc. # 10.)

The clerk is instructed to terminate the pending motions and close this case.

Dated: July 31, 2012
       White Plains, NY

                                        SO ORDERED:

                                        _____
                                        Vincent L. Briccetti
                                        United States District Judge